## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**CITY OF BIRMINGHAM,**
    Plaintiff,

v.                                               Case No. 2:22-cv-541-CLM

**TRANE U.S., INC., *et al.*,**
    Defendants.

### MEMORANDUM OPINION

The City of Birmingham agreed to pay Trane U.S., Inc. more than $60 million to upgrade its facilities, plus another half million dollars every year for 18 years, in exchange for Trane's assurance that its work would save the City more than $100 million over those 18 years.

The City says it paid Trane, and Trane did the work, but the savings never came. Nor will they. The City says it was hoodwinked, so it sued Trane and two of its employees, Richard Carson and Daniel Shabo, in Alabama state court alleging fraud, bad faith, and misrepresentation.

Trane removed the case to this court, arguing that the City added Carson, the sole Alabama-resident defendant, to its complaint to ensure federal courts wouldn't have diversity jurisdiction. (Doc. 1). The City moved to remand the case to state court, arguing that its claim against Carson is viable, so this court lacks jurisdiction. (Doc. 13). For the reasons stated below, the court agrees with the City and will thus **GRANT** the City's motion and remand the case to state court.

### STATEMENT OF THE ALLEGED FACTS

Richard Carson was an account executive for Trane. In April 2014, Carson submitted a proposal to the City of Birmingham to improve city facilities, with Carson serving as the project manager. According to

Carson, the project would be "self-funding" and result in long-term economic savings for the City.

After performing an energy audit, Carson, and another Trane employee, Daniel Shabo, told the City that Trane's proposal could result in $65 million in savings while only costing between $47 and $57 million. They also told the City that the project would result in savings of $4.8 to $5.5 million in future capital improvements. Trane assured the City that "total cash flow over the project term will be positive AND annual cash flow will be positive every year" for 18 years. (Doc. 1-1, ¶ 16).

Talks continued into 2016 when Trane asked the City for a larger up-front payment to ensure project costs would not exceed guaranteed savings over time. Trane reassured the City that the improvements would void future capital improvements and other costs. Apparently satisfied with Trane's representations, the City Council approved a contract that year. Under it, Trane would improve 119 City facilities at a cost of $61.3 million for the improvements, plus $525,500 (with a 3% annual increase) each year for 18 years for Trane to measure energy savings. In return, the City would save about $102 million in energy costs over that period.

Trane made the improvements from 2016 to 2019. As Trane worked, Carson and others sent the City progress reports that purported to show interim savings. Carson retired at the end of 2019.

Trane sent the City the first complete annual report in July 2020. That report covered the City's first-year savings from April 1, 2019 to March 31, 2020. Not long after, the City investigated the report. The City says that, in Fall 2020, that investigation revealed that the City would not receive the savings promised by Trane. The City dug deeper and concluded in February 2022 that the City's savings would fall far short of Trane's projections. So the City sued Trane, Carson, and Shabo in state court in March 2022. As later explained, the City's motion to remand turns on whether the City timely sued Carson given Alabama's 2-year statute of limitations.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Removal is proper when the federal court has subject matter jurisdiction over the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). "Because removal jurisdiction raises significant federalism concerns, . . . . all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.,* 168 F.3d 405, 411 (11th Cir.1999). Indeed, "[t]o determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir. 1997).

## DISCUSSION

Trane must prove two things for removal to be proper under diversity jurisdiction: (1) the parties must be completely diverse, and (2) the amount in controversy must be more than $75,000. *See* 28 U.S.C. § 1332. The City seeks over $25 million from Trane (doc. 1-1 at 6). So jurisdiction turns on whether the City "fraudulently joined" Richard Carson as a defendant to destroy diversity in this lawsuit.

### I.   The Oglesby Affidavit

The court must first determine what evidence it may consider when resolving the City's motion to remand. To prove Carson was not fraudulently joined, the City relies in part on an affidavit from Terry Oglesby, an architect for the City (doc. 13-1). Trane argues that the court should not consider that affidavit because (1) it is improper for the court

to consider evidence not presented before removal, and (2) the affidavit presents a new cause of action or theory not raised in state court.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998); *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005). Indeed, the court may "consider affidavits . . . submitted by the parties" even if the affidavits were not presented at the time of removal. *Crowe*, 113 F.3d at 1538. So Trane's first argument fails.

But even when an affidavit is properly before the court on a motion to remand, the court may not consider it if it "present[s] new causes of action or theories not raised in the controlling petition filed in state court." *Ferguson v. Easton Tech. Prod., Inc.*, 2015 WL 9268149, at *8 (N.D. Ala. Dec. 21, 2015) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999)). Contrary to Trane's arguments, however, the Oglesby affidavit does not introduce a new theory or cause of action against Carson. Instead, it supports the claims in the City's original complaint and—important here—adds context on the timing of the City's lawsuit. So the affidavit is properly presented, and the court will consider it when analyzing the fraudulent joinder question.

## II.  Fraudulent Joinder

Again, the question is whether the court has diversity jurisdiction, which hinges on the City's claim against Richard Carson, the only Defendant who resides in Alabama. If the City properly pleaded Carson as a Defendant, there is no diversity among the parties. And once the court outlines the standards of review, you'll see the ultimate question is this: Has Trane proved by clear and convincing evidence that no Alabama state court could find that the City did not discover Carson's alleged fraud before March 30, 2020—*i.e.*, two years before the City filed its complaint—and thus deny a motion to dismiss based on the state statute of limitation?

4

Yes, that question is a mouthful—because it's based on three necessary standards of review. The court starts by explaining them.

**A. Standards of Review**

1. <u>The Eleventh Circuit's "No Possibility of Recovery" Standard</u>

The first standard answers the question: Who has the burden to prove what? "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe*, 113 F.3d at 1538. Trane removed the case, and it relies only on the first theory—*i.e.*, there is no "possibility that a state court would find that the complaint states a cause of action against [Carson]." *Id.*[1] To show that it could survive a Rule 12 motion filed by Carson, the City "need not have a winning case against the allegedly fraudulent defendant; [it] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). If that possibility exists, the court "must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538.

2. <u>Alabama's Statute of Limitation</u>

That begs the second question: What would make the City's case against Carson invalid, and thus susceptible to a Rule 12 motion filed by Carson. Trane says that the City's claims against Carson are barred by Alabama's 2-year statute of limitations. If Trane is right about the statute of limitation, it's right about fraudulent joinder. *See Bullock v. United Benefit Ins. Co.,* 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001) (when "claims against a resident defendant are barred by the statute of limitations, then there is no possibility the plaintiff can establish a cause

---

[1] The court still believes the "reasonable basis" test most accurately reflects Supreme Court precedent but will still apply the "no possibility of recovery" test the Eleventh Circuit has adopted. *See Alred v. Preferred Compounding Corp.*, 2020 WL 429486, at *3-4 (N.D. Ala. Jan. 28, 2020).

of action against the resident defendant. . . . [and] the resident defendant is deemed to be fraudulently joined"). So we turn to state law.

Alabama law subjects fraud claims to a two-year statute of limitations. Ala. Code § 6–2–38; *see Waldrup v. Hartford Life Ins. Co.*, 598 F. Supp. 2d 1219 (N.D. Ala. 2008). But thanks to a savings clause, the 2-year clock doesn't start "until the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6–2–3. When the savings clause is raised, "the burden is upon he who claims the benefit of § 6–2–3 to show that he comes within it." *Amason v. First State Bank of Lineville*, 369 So.2d 547, 550 (Ala. 1979).

Plugging this tolling standard into the Eleventh Circuit's fraudulent joinder standard gives us this question: Is it possible that an Alabama state court would deny a statute of limitation-based motion to dismiss based on the City's argument that it did not discover Carson's alleged fraud before March 30, 2020—*i.e.*, two years before the City filed its complaint in state court?

3. Pleading Fraud in Alabama

But there's one more standard to discuss before the court can answer that question: How specific must the City have pleaded the facts that would trigger the savings clause?

"To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011). Like the federal rules, the Alabama Rules of Civil Procedure enhance the pleading standing for fraud claims. *See Smith v. Nat'l Sec. Ins. Co.*, 860 So.2d 343, 346 (Ala. 2003). Under Alabama's Rule 9(b), the plaintiff must plead fraud with particularity; that is, he must show the "time, place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained." *Id.* And to invoke the § 6–2–3

savings clause for fraud claims, the complaint must allege "the facts or circumstances by which the [defendant] concealed the cause of action or injury" and "what prevented [plaintiff] from discovering facts surrounding the fraud." *Id.* at 347. Rule 9(b) "does not require every element to be stated with particularity, but the pleader must use more than generalized or conclusionary statements setting out the fraud." *Robinson v. Allstate Ins. Co.*, 399 So.2d 288, 290 (Ala. 1981).

The Eleventh Circuit considered the savings clause against this standard in *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278 (11th Cir. 2006). At the outset, the Circuit Court reasoned that "[o]rdinarily, where the viability of a plaintiff's claim against a non-diverse defendant depends on whether section 6–2–3's savings clause applies, the case should be remanded summarily; such a question is emphatically a matter for the state courts to decide." *Id.* at 1282. Although the complaint was "not highly detailed," the court held that it "provide[d] more specificity than the 'generalized and conclusory' allegations that provide no fair notice at all." *Id.* at 1284 (citing *Lyde v. United Ins. Co., of Am.*, 628 So.2d 665, 670 (Ala. Civ. App. 1993)). For example, the complaint alleged "the Defendants wrongfully concealed and suppressed from Plaintiff the true nature and pattern and practice in which the defendants were engaged . . . . the Defendants specifically concealed and suppressed from Plaintiff the wrongful acts and/or material facts described." *Id.*

The Eleventh Circuit concluded that "[o]ur task is not to gauge the sufficiency of the pleadings in this case. Our inquiry is more basic: we must decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this complaint sufficient to invoke Ala. Code § 6–2–3." *Id.* The court held that even though the "patchy allegations may ultimately prove insufficient" it could not definitively say there was no possibility the plaintiff asserted a claim under § 6–2–3. *Id.* Thus, the court reversed the district court's denial of the plaintiff's motion to remand, as "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall

short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Id.*

In short, the City only has to plead enough facts to make it *possible* that a state court would allow the City to invoke the savings clause. Plugging this third standard into the previous two gives us the ultimate question: Has Trane proved by clear and convincing evidence that no Alabama state court could possibly find that the City pleaded enough facts to prove that the City did not discover Carson's alleged fraud before March 30, 2020—*i.e.*, two years before the City filed its complaint—and thus trigger the tolling provision in Alabama's 2-year statute of limitation?

With that, we (finally) turn to the question at hand.

### B. Analysis

The court finds that it is possible that a state court would deny a statute of limitation-based motion to dismiss filed by Carson after that court reviewed the City's complaint plus the Oglesby affidavit.

Again, Carson sold the Trane project to the City in 2016 and managed the project through his retirement at the end of 2019. Trane seizes on that retirement date to argue that Carson could not have committed fraud after 2019 because he didn't work after 2019. So, the City's April 2022 lawsuit against Carson was at least four months late.

The City responds that, for tolling, it's not Carson's fraudulent actions that count; it's the *discovery* of Carson's fraudulent actions. And the City says that it couldn't discover Carson's fraud until Trane submitted the first annual report in July 2020. And the investigation of that report, which concluded in November, was the first time that the City says it knew Trane was lying about the City's savings.

The court is "unable to say there is 'no possibility' that the Alabama state court would find that [the City] has sufficiently pled a case for tolling." *Henderson*, 454 F.3d at 1284. It is at least possible that an Alabama court would agree that the City's filing clock against Carson

8

started in July 2020, when Trane submitted the first annual report, or in November 2020, when the City finished its investigation of that report. Either way, a state court that agrees with either triggering date would find that the City timely filed its lawsuit in March 2022.

And while the City could have pleaded the fraudulent coverup more clearly, the court finds that it is at least possible that a state court could find that the City pleaded sufficient facts to trigger the tolling provision. For example, the City's original complaint alleges that from 2014 to 2016, Carson misrepresented that the City would achieve "long-term economic savings" (doc. 1-1, ¶ 12) that are "calculated by comparing actual energy usage after project completion" (doc. 1-1, ¶ 13); that "total cash flow over the project term will be positive AND annual cash flow will be positive every year" (doc. 1-1, ¶ 16); and that "Trane assured the City that the project would be paid for from guaranteed savings and the City would achieve positive cash flow each year of the proposed 18-year guaranteed period" (doc. 1-1, ¶ 17). The City then alleged that:

> Trane—through Carson and Shabo . . . misrepresented to the City that: (a) guaranteed savings from the improvements to City buildings recommended by Trane will pay for the cost of the entire project, . . .; (b) the total cash flow over the project term will be positive and annual cash flow from the project will be positive every year during the repayment term; (c) the project will be backed by Trane's full guarantee of all savings and if the savings are less than the guaranteed amount, Trane will pay the difference to the City; (d) the operational savings and capital cost avoidance savings proposed by Trane are REAL cost savings that will occur as a result of implementation of the Trane project.

(Doc. 1-1, ¶ 42). A state court could find (a) that these allegations state a fraud claim against Carson and (b) that the allegations establish an ongoing fraudulent scheme—year after year—that Carson contributed to.

Adding the Oglesby affidavit to the original complaint enhances the possibility that the City could defeat a motion to dismiss. In his affidavit, Oglesby declared that "during a preliminary analysis of Trane's first annual report in the Fall of 2020, the City discovered in November 2020 at the earliest that the City may have experienced significant savings shortfalls contrary to Trane's representations." (Doc. 13-1, ¶ 10). He also declared that after the city completed its investigation in February 2022, it "discovered that the project had fallen far short of the annual savings promised by Trane and that the building improvements would never be able to achieve sufficient savings to cover the cost of the project." (Doc. 13-1, ¶ 12). And according to Oglesby, "[b]efore Trane emailed its year 1 report to me and other City officials in July 2020 and before the City subsequently compared third-party utility data to Trane's report, the City could not have discovered the discrepancies between the savings promised by Trane and the City's actual savings." (Doc. 13-1, ¶ 13). That's because during the construction period, "there was no way to meaningfully and completely measure and verify whether the representations made by Trane during the inception and signing of the Contract in 2016 were truthful or accurate." (Doc. 13-1, ¶ 13).

For federalism's sake, the court will say no more. As the Eleventh Circuit said, "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson*, 454 F.3d at 1284. In other words, only the state court should say whether the City's claim against Carson can move forward under state law. This court's job is limited to returning the case from whence it came.

## CONCLUSION

For the reasons above, the court **GRANTS** the City's motion to remand this case to the Circuit Court of Jefferson County, Alabama. (Doc. 13). The court will enter a separate order that carries out this opinion.

**DONE** and **ORDERED** on February 6, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE